***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Accordingly, the Full Commission affirms with modifications, the Opinion and Award of Deputy Commissioner Rideout.
 *********** ISSUES
The issues in contention are:
1. Did Plaintiff sustain a compensable injury by accident on May 4, 2009? *Page 2 
2. If so, what, if any, additional medical treatment or financial compensation is due?
3. Are Defendants subject to the North Carolina Workers' Compensation Act?
4. What sanctions, if any, are appropriate?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 34 years old. Plaintiff completed the tenth grade and later obtained his high school diploma in 2008. Plaintiff's vocational history consists solely of painting.
2. In 2008, Plaintiff, Dale Morton, and George Stone began painting a "spec" house being constructed by Bill Adams and Adams Adams Construction. Plaintiff and Mr. Morton worked for George Stone Painting which was owned by George Stone. By mid 2008, the painting on that house stopped.
3. In early to mid 2009, a disagreement arose between George Stone and Bill Adams about work that Mr. Adams felt had not been completed, even though Mr. Stone had been paid. As a result of that disagreement, Mr. Stone returned to the "spec" house, alone, and started painting. Plaintiff and Mr. Morton found out about Mr. Stone painting the house alone and went to assist him. The two were working without pay at that time.
4. Steve Davidson worked on the same job site for Adams Adams Construction. The greater weight of the evidence shows that Mr. Davidson was an employee of Adams Adams Construction. *Page 3 
5. In the days before May 4, 2009, another disagreement arose between Mr. Stone and Mr. Adams which caused Mr. Stone to walk off the job site at the "spec" house. Plaintiff and Mr. Morton were asked by Mr. Adams to finish the painting job. Both Plaintiff and Mr. Morton completed the painting job and were paid by Adams Adams Construction.
6. On May 4, 2009, Plaintiff and Mr. Morton were painting the front exterior of the "spec house." Plaintiff was looking up while painting the trim around the front door when he stepped backward off the brick threshold. His ankle rolled causing him to fall to the ground. During the fall, Plaintiff extended his left arm to catch himself and fell onto that left arm causing injury. The fall was not witnessed. Mr. Morton walked around the side of the house and did not witness Plaintiff's fall. Plaintiff immediately reported the fall and injury to both Mr. Morton and Mr. Adams.
7. Plaintiff presented to Bladen County Hospital Emergency Room on the date of injury complaining of left arm and wrist discomfort. An x-ray taken at the time returned negative results for fracture. Plaintiff was referred to Cape Fear Orthopedics but was unable to get additional treatment due to his lack of funds.
8. At the time of the hearing before the Deputy Commissioner, Plaintiff continued to suffer from pain, weakness, and numbness and tingling in the left arm. Plaintiff's symptoms had waxed and waned since the injury but had always been present.
9. Although Plaintiff continued to look for work, due the severity of his pain, he was unable to work until he moved to Charlotte, North Carolina where he took a job with Labor Ready on October 22, 2009. Labor Ready paid Plaintiff $7.25 per hour for 40 hours per week. The Full Commission finds Plaintiff's ability to earn wages with Labor Ready to be indicative of wage earning capacity. There was testimony about Plaintiff returning work for Mr. Stone. *Page 4 
However, the evidence was not clear if Plaintiff's return to work with Mr. Stone was before or after Plaintiff's work with Labor Ready. Mr. Morton also testified about Plaintiff's alleged painting work directly after the May 4, 2009 injury. The Full Commission finds Mr. Morton's testimony not credible.
10. There was conflicting testimony about who employed Plaintiff and Mr. Morton in the days before the accident. Plaintiff and Mr. Stone indicated that Mr. Adams hired them and controlled their work. Mr. Adams and Mr. Morton testified that Plaintiff and Mr. Morton were still working for Mr. Stone at the time of the accident.
11. Mr. Adams did not have a valid workers' compensation policy at the time of the accident and had not acquired a valid certificate of workers' compensation insurance from Mr. Stone.
12. The greater weight of the evidence shows and the Full Commission finds that Plaintiff was an employee of George Stone. However, Adams Adams Construction is liable pursuant to N.C. Gen. Stat. § 97-19 because it did not procure a certificate of insurance from Mr. Stone.
13. The evidence shows that Mr. Stone only had two employees so he would not have been required to have worker's compensation insurance. Therefore, George Stone Painting and/or George Stone are not necessary parties to this action.
14. At the time of injury, Plaintiff was making $15 per hour while working on the "spec" house for Mr. Adams. The Full Commission finds that Plaintiff would have been working four hours per day. Therefore, Plaintiff's average weekly wage is $300. *Page 5 
15. Mr. Adams and Mr. Morton testified that Plaintiff smoked marijuana just before his injury occurred. Plaintiff denied that allegation. Defendants have presented insufficient evidence under N.C. Gen. Stat. § 97-12 that Plaintiff was intoxicated at the time of his injury.
16. Defendants have put forth no evidence that Plaintiff's alleged intoxication or being under the influence was a proximate cause of the May 4, 2009 fall.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's claim is subject to the North Carolina Worker's Compensation Act and the Industrial Commission has jurisdiction over this matter. N.C. Gen. Stat. § 97-19.
2. Plaintiff sustained a compensable injury by accident to his left arm on May 4, 2009 while painting the "spec" house for Mr. Adams. N.C. Gen. Stat. § 97-2.
3. Under N.C. Gen. Stat. § 97-19,
 [a]ny principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without requiring from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor, stating that such subcontractor has complied with G.S. 97-93 hereof, shall be liable, irrespective of whether such subcontractor has regularly in service fewer than three employees in the same business within this State, to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract. *Page 6 
Therefore, Adams Adams Construction and Bill Adams individually are liable for Plaintiff's injuries. N.C. Gen. Stat. §§ 97-19, 97-94(d).
4. Plaintiff's claim is not barred by N.C. Gen. Stat. § 97-12 as Defendants have failed to meet their burden of proof that Plaintiff's alleged intoxication was a proximate cause of his May 4, 2009 work injury.
5. Due to the time and nature of Plaintiff's employment, the most fair method of calculating Plaintiff's average weekly wage is to use method 5 under N.C. Gen. Stat. § 97-2. As Plaintiff worked four hours per day at the time of the injury earning $15 per hour, Plaintiff's average weekly wage is $300.00 resulting in a compensation rate of $200.01.Id.; N.C. Gen. Stat. § 97-29.
6. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than her pre-injury wages. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProd. Distrib., *Page 7 supra. The greater weight of the evidence established that Plaintiff was not able to earn wages May 4, 2009 through October 22, 2009. Therefore, Plaintiff is entitled to temporary total disability compensation from May 4, 2009 through October 22, 2009 at the rate of $200.01 per week. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to medical compensation which is reasonably necessary to provide relief or effect a cure for his May 4, 2009 injury. N.C. Gen. Stat. § 97-25.
8. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
9. Defendant, Adams Adams Construction, failed to obtain a certificate of insurance from George Stone. Therefore, Adams Adams Construction regularly employed three or more employees without workers' compensation insurance on the date of Plaintiff's accident. This amounts to at least one day without workers' compensation insurance to cover his employees as required by the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-93.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law the Full Commission enters the following:
 AWARD *Page 8 
1. Defendant Adams and Adams Construction shall pay to Plaintiff temporary total disability compensation from May 4, 2009 until October, 22, 2009 at the rate of $200.01 per week.
2. Defendants shall pay for Plaintiff's medical compensation which is reasonably necessary to provide relief or effect a cure. Said compensation shall include but not be limited to payment for the May 4, 2009 visit to Bladen County Hospital as well as expected follow up care with Cape Fear Orthopedics.
3. Defendants shall pay to Plaintiff's attorney an award of 25% of all compensation owed and owing to Plaintiff. Said fee shall be deducted from the compensation payable to Plaintiff and paid directly to Plaintiff's attorney by Defendants.
4. Pursuant to N.C. Gen. Stat. § 97-94(b), a civil penalty in the amount of $50.00 per day is hereby assessed against Defendant-Employer, William Adams, individually, and Adams Adams Construction for failure to maintain workers' compensation coverage on their employees in North Carolina on May 4, 2009. Defendant shall make a check payable to the North Carolina Industrial Commission in the amount of $50.00 and send it to Assistant Attorney General Tracy C. Curtner at the office of the North Carolina Industrial Commission Fraud Section.
5. Defendants shall pay all costs.
This the 26th day of January 2011.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING: *Page 9 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1